**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 1:09-MD-02051-ALTONAGA**



FILED by _____ D.C.

**DEC 2 3 2011**

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. -- MIAMI

IN RE: DENTURE CREAM PRODUCTS
LIABILITY LITIGATION

_____ /

**11-cv-24618 ALTONAGA/SIMONTON**

This document relates to:

------------------------------------------------------------X

| | |
|---|---|
| **PATRICIA E. CARROLL,** | **CASE NO:** |
| **Plaintiff,** | **COMPLAINT and** |
| **vs.** | **DEMAND FOR JURY TRIAL** |
| **SMITHKLINE BEECHAM CORPORATION** | **Plaintiff is a U.S. Citizen and** |
| **d/b/a GLAXOSMITHKLINE,** | **Resident of Texas** |
| **GLAXOSMITHKLINE CONSUMER** | **(United States District Court for** |
| **HEALTHCARE L.L.C., GLAXOSMITHKLINE** | **the Eastern District of Texas)** |
| **CONSUMER HEALTHCARE, L.P., and** | |
| **BLOCK DRUG COMPANY, INC.,** | |
| **Defendants.** | |

_____ /

        Plaintiff, PATRICIA E. CARROLL, by and through her undersigned counsel, brings this

action against the Defendants, SMITHKLINE BEECHAM CORPORATION d/b/a

GLAXOSMITHKLINE, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C.,

GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY,

INC., and alleges as follows:

## NATURE OF THE ACTION

        1.      This is an action for damages suffered by Plaintiff as a direct and proximate result

of the Defendants' negligent and wrongful conduct in connection with the design, development,

manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the

denture adhesive creams known as SUPER POLIGRIP® and/or other SUPER POLIGRIP® branded products (hereinafter collectively referred to as SUPER POLIGRIP®).

2.    At all times material hereto, SUPER POLIGRIP® was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Defendants SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, INC., herein.

## PARTIES, JURISDICTION and VENUE

3.    This Court has jurisdiction pursuant to 28 United States Code Section 1332 in that Plaintiff is a citizen of a State which is different from the States where Defendants are incorporated and have their principal places of business.

4.    The amount in controversy exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs.

5.    Venue is proper in this district pursuant to Case Management Order No. 3 entered on September 3, 2009, signed by Cecilia M. Altonaga, United States District Judge, allowing denture adhesive cream products liability actions to be filed directly in the Southern District of Florida.

6.    Plaintiff PATRICIA E. CARROLL is a natural person and a resident of the State of Texas.

7.    Defendant,    SMITHKLINE    BEECHAM    CORPORATION    d/b/a GLAXOSMITHKLINE, is a Pennsylvania Corporation which has its principal place of business at One Franklin Plaza, 200 North 16th Street, Philadelphia, Pennsylvania 19102.

8.     At all times material hereto, the Defendant, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling of SUPER POLIGRIP®.

9.     Upon information and belief, at all relevant times, the Defendant, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, was present and doing business in the State of Texas and in the United States District Court for the Eastern District of Texas in particular.

10.     At all relevant times, the Defendant, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, transacted, solicited, and conducted business in the State of Texas and derived substantial revenue from such business.

11.     At all relevant times, the Defendant, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, expected or should have expected that its acts would have consequences within the United States of America, and the United States District Court for the Eastern District of Texas in particular.

12.     The Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., is a Pennsylvania Limited Liability Company which has its principal place of business at 200 North 16th Street, Philadelphia, Pennsylvania 19102.

13.     Upon information and belief, the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., is a wholly owned subsidiary of the Defendant, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE.

14.     At all times material hereto, the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., was engaged in the business of designing, developing, manufacturing,

testing, packaging, promoting, marketing, distributing, labeling, and/or selling SUPER POLIGRIP®.

15.     Upon information and belief, at all relevant times, the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., was present and doing business in the State of Texas and in the United States District Court for the Eastern District of Texas in particular.

16.     At all relevant times, the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., transacted, solicited, and conducted business in the State of Texas and derived substantial revenue from such business.

17.     At all relevant times, the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., expected or should have expected that its acts would have consequences within the United States of America, and the United States District Court for the Eastern District of Texas in particular.

18.     The Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.P., is a Delaware Limited Partnership which, upon information and belief, has the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., acting as general partner.

19.     At all times material hereto, the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.P., was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling SUPER POLIGRIP®.

20.     Upon information and belief, at all relevant times, the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.P., was present and doing business in

the State of Texas and in the United States District Court for the Eastern District of Texas in particular.

21.     At all relevant times, the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.P., transacted, solicited, and conducted business in the State of Texas and derived substantial revenue from such business.

22.     At all relevant times, the Defendant, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.P., expected or should have expected that its acts would have consequences within the United States of America, and the United States District Court for the Eastern District of Texas in particular.

23.     The Defendant, BLOCK DRUG COMPANY INC., is a New Jersey corporation which has its principal place of business at 257 Cornelison Avenue, Jersey City, New Jersey 07302.

24.     Upon information and belief, the Defendant, BLOCK DRUG COMPANY, INC., is a wholly owned subsidiary of the Defendant, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE.

25.     At all times material hereto, the Defendant, BLOCK DRUG COMPANY INC., was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling of SUPER POLIGRIP®.

26.     Upon information and belief, at all relevant times, the Defendant, BLOCK DRUG COMPANY INC., was present and doing business in the State of Texas and in the United States District Court for the Eastern District of Texas in particular.

27.    At all relevant times, the Defendant, BLOCK DRUG COMPANY, INC., transacted, solicited, and conducted business in the State of Texas and derived substantial revenue from such business.

28.    At all relevant times, the Defendant, BLOCK DRUG COMPANY, INC., expected or should have expected that its acts would have consequences within the United States of America, and the United States District Court for the Eastern District of Texas in particular.

29.    Defendants,    SMITHKLINE    BEECHAM    CORPORATION    d/b/a GLAXOSMITHKLINE,  GLAXOSMITHKLINE  CONSUMER  HEALTHCARE  L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, INC., developed, designed, formulated, manufactured, tested, packaged, labeled, advertised, marketed, distributed and have sold SUPER POLIGRIP® denture adhesive product.

30.    Furthermore, despite Defendants, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, INC.'s purported business associations and corporate structures, Plaintiff is informed and believes and thereon alleges that Defendants, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, INC., are and were, at all relevant times, actually the "alter egos" of Defendant SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE such that the acts, omissions, and/or transgressions of Defendants, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, INC., were the acts, omission, and/or transgressions of Defendant, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE,

because Defendant, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE exerted and continues to exert, and/or had and continues to have, the right to exert and control overall aspects of the development, design, formulation, manufacturing, testing, packaging, labeling, advertising, marketing, distributing and selling of SUPER POLIGRIP® denture adhesive products while Defendants, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, INC., are and were, at all relevant times, shell entities that are undercapitalized, without a sufficient number of employees and/or staff of their own, without sufficient assets of their own, and/or without proper procedures required of such purported entities.

Plaintiff is further informed and believes and thereon alleges that Defendant, BLOCK DRUG COMPANY, INC., is and was, at all relevant times, actually the "alter ego" of Defendants, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, such that the acts, omissions, and/or transgressions of Defendant, BLOCK DRUG COMPANY, INC., were the acts, omission, and/or transgressions of Defendants, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, because Defendants, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, exerted and continue to exert, and/or had and continue to have, the right to exert control over all aspects of the development, design, formulation, manufacturing, testing, packaging, labeling, advertising, marketing, distributing and sales of SUPER POLIGRIP® denture adhesive product,

and Defendant, BLOCK DRUG COMPANY, INC., is a shell company that is, and was at all relevant times, undercapitalized, without a sufficient number of employees and/or staff of their own, without sufficient assets of their own, and/or without proper procedures required of such a purported entity.

31.     Plaintiff is further informed and believes and thereon alleges that Defendants, SMITHKLINE      BEECHAM      CORPORATION     d/b/a      GLAXOSMITHKLINE, GLAXOSMITHKLINE   CONSUMER   HEALTHCARE   L.L.C.,   GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, INC., are and were, at all relevant times, the agents, employees, and/or representatives of each other and were acting in furtherance and in the course and scope of said agency, employment, and/or representation in doing the acts, omission, and transgressions herein alleged.

## FACTUAL ALLEGATIONS

32.     Defendants developed, designed, formulated, manufactured, packaged, labeled, advertised, marketed, instructed on and warned about, distributed and sold SUPER POLIGRIP® denture adhesive products since at least 1998.

33.     SUPER POLIGRIP® is FDA Class I medical product.

34.     SUPER POLIGRIP® contains a form of zinc which is bonded to a chemical of unknown formulation.

35.     Plaintiff avers that when SUPER POLIGRIP® is foreseeably swallowed and/or otherwise exposed to the user's gastrointestinal tract, zinc in excess amounts is absorbed in the body's tissues, upsetting mineral homeostasis and resulting in depleted copper levels in the body. This copper depletion results in the development of, *inter alia*, a constellation of neurological symptoms generally referred to as neuropathy and other complications.

36.     By the time these symptoms are noticed and eventually connected to excess zinc and copper depletion, permanent neurological and other physical injury has already been suffered by the user.

37.     While cessation of SUPER POLIGRIP® generally results in a return to normal zinc and copper levels, symptoms do not improve.  The former user is thus left with permanent, profound personal injuries and enduring disabilities.

38.     Defendants knew and reasonably understood that some portion of SUPER POLIGRIP® would be introduced into the gastro-intestinal tract and metabolized.

39.     Defendants further knew and/or reasonably should have known, *inter alia*, that the amount of zinc and/or the stability of the zinc in light of its negatively charged bonding agent could impact upon said mineral's bioavailability, *i.e.* the extent to which a mineral or other substance is absorbed or will become available at the site of the physiological activity.

40.     Prior to the time zinc was added to SUPER POLIGRIP®, it was generally known and accepted in the scientific community that excess zinc in the body, *i.e.* zinc toxicity or hyperzincemia, could have adverse health effects in humans including the inducement of copper depletion and deficiency, *i.e.* hypocupremia.

41.     Prior to the time zinc was added to SUPER POLIGRIP®, it was generally known and accepted in the scientific community that hypocupremia, particularly of a chronic nature, could cause a host of adverse health effects including neurological damage and injury which is often profound and irreversible.

42.     Given the state of scientific knowledge and understanding at the time zinc was added to SUPER POLIGRIP®, Plaintiff avers that it was impossible and implausible that Defendants, and each of them, were then unaware of the likely adverse effects in humans

associated with the chronic absorption of zinc attributable to Plaintiff, PATRICIA E. CARROLL's use and ingestion of SUPER POLIGRIP®, including hypocupremia.

43.     Sometime after adding zinc to SUPER POLIGRIP® and in or about 1998, Defendants, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, devised and began marketing, distributing and selling a product called "SUPER POLIGRIP® FREE".  Despite the fact that this product was marketed as being free of artificial colors and flavors, what it is free of, according to its list of ingredients, is zinc.  Plaintiff is informed and believes that Defendants, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, did so to offer a zinc-free alternative based upon their knowledge of the adverse health consequences associated with chronic zinc absorption, and to reduce and mitigate its exposure to claims of personal injury, particularly from young and health conscious denture cream users.

44.     Defendants,   SMITHKLINE   BEECHAM   CORPORATION   d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, were further made aware of the dangers of its SUPER POLIGRIP® and their failings in terms of providing any or adequate warnings, instructions, directions, or other information regarding, *inter alia*, product directions or its health concerns as a result of numerous complaints about SUPER POLIGRIP® and other zinc-based denture creams including, *inter alia*, FIXODENT®. For example, in 2006 and again in 2007 lawsuits alleging personal injuries from excess zinc

absorption were filed against Defendants, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY.

45.     As a result of the growing concern regarding the safety of SUPER POLIGRIP® as evidenced by two lawsuits, Defendants SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, and each of them, caused to be published and disseminated to the media and *via* the Internet, the following false and misleading statement regarding SUPER POLIGRIP®:

> *GlaxoSmithKline Consumer Healthcare stands by the safety and efficacy of SUPER POLIGRIP®, which is approved and regulated by the Food and Drug Administration (FDA). Although we can't comment on this person's claim, we want to assure consumers that SUPER POLIGRIP is safe and effective when used as directed. When someone uses SUPER POLIGRIP for their dentures, the vast majority of the zinc in the product remains in the adhesive and is not released into the mouth. Thus the potential for absorption of zinc throughout the gums is minimal. Although it is expected that a small amount of SUPER POLIGRIP would be swallowed when used as directed, the amount of zinc that is released into the stomach and absorbed into the bloodstream is very small. Therefore, the possibility of experiencing adverse effects from exposure to zinc in SUPER POLIGRIP is highly unlikely when the product is used as directed. Zinc is an essential mineral that is found in almost every cell in the body and in foods like red meat, poultry, whole grains and beans and is necessary for the maintenance of good health and nutrition. Zinc is a very common ingredient in many over-the-counter and FDA approved products.*

46.     Said statement is likely to and misleads consumers, including but not limited to Plaintiff herein, in that *inter alia*, it claims that SUPER POLIGRIP® is safe and effective and purports to apportion blame for any adverse events on deviation from use as directed, although Defendants, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE CONSUMER HEALTHCARE L.L.C., GLAXOSMITHKLINE

CONSUMER HEALTHCARE, L.P., and BLOCK DRUG COMPANY, and each of them, failed to provide any directions that might reasonably address preventing deviation from directed use.

47.     On or about August 26, 2008, an article published in the respected scholarly journal "Neurology" addressed the issue of zinc in denture cream generally and in SUPER POLIGRIP®. The article specifically linked excess zinc in SUPER POLIGRIP® at levels of approximately 34,000 ug/g to hyperzincemia and hypocupremia, which was determined to be the cause of "profound neurologic disease" in the patients reviewed. The abstract conclusion stated: "Denture cream contains zinc, and chronic excessive use may result in hypocupremia and serious neurologic disease."

48.     Despite clear and undeniable knowledge of the link between chronic exposure to excess zinc and injury to humans, including profound, irreversible, neurological damage caused by hyperzincemia and hypocupremia, since at least 1998, Defendants, and each of them, have and continue to formulate, manufacture, distribute, market, and label SUPER POLIGRIP® and FIXODENT® for sale to consumers in the State of Texas and throughout the United States, concealing this serious health hazard, and omitting from their packaging and labeling any or adequate warnings, instructions, directions or other information regarding, *inter alia*, health concerns, safe use, or even defining what Defendants might believe to be "excessive" use.

49.     In omitting and concealing this critical safety information regarding use of SUPER POLIGRIP® to induce the purchase and use of SUPER POLIGRIP®, Defendants, and each of them, engaged in and continue to engage in conduct likely to mislead consumers, including but not limited to Plaintiff herein, and which is fraudulent, unfair, and unlawful.

50.     Plaintiff PATRICIA E. CARROLL is 83 years of age.  Plaintiff PATRICIA E. CARROLL received partial upper dentures in the 60's, full upper dentures in the 70's, and full lower dentures in 80's.  Plaintiff's denture adhesive product of choice was SUPER POLIGRIP®.

51.     Plaintiff PATRICIA E. CARROLL ceased the use of SUPER POLIGRIP® in or about February 2010 after she was diagnosed with zinc poisoning attributed to excess zinc in SUPER POLIGRIP®.

52.     Plaintiff PATRICIA E. CARROLL now suffers from profound and permanent neurological and other injuries attributable to her use of SUPER POLIGRIP®, which injuries have left Plaintiff unable to perform her normal, customary and daily activities.

53.     Plaintiff PATRICIA E. CARROLL alleges that these injuries and disabilities are a result of an actionable defect in the SUPER POLIGRIP® products used by Plaintiff, and negligence on the part of Defendants, and each of them.

54.     Had the Defendants properly disclosed the risks associated with SUPER POLIGRIP®, Plaintiff would not have used these products.

55.     As alleged herein, as a direct and proximate result of the Defendants' negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of SUPER POLIGRIP®, Plaintiff PATRICIA E. CARROLL suffered severe and permanent physical injuries, including but not limited to profound and permanent neurological injuries.  Plaintiff has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.

56.     Plaintiff PATRICIA E. CARROLL has suffered a loss of earning capacity. Plaintiff PATRICIA E. CARROLL has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Plaintiff PATRICIA E.

CARROLL's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants, and each of them, as alleged herein.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY

57.     Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

58.     At all times material to this action, the Defendants, and each of them, were responsible for designing, developing, and manufacturing SUPER POLIGRIP®.

59.     SUPER POLIGRIP® is defective and unreasonably dangerous to consumers.

60.     SUPER POLIGRIP® is defective in its design or formulation in that it is are not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

61.     At all times material to this action, SUPER POLIGRIP® was expected to reach, and did reach, consumers in the State of Texas and throughout the United States, including Plaintiff PATRICIA E. CARROLL herein, without substantial change in the condition in which it was sold.

62.     At all times material to this action, SUPER POLIGRIP® was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commence in ways which include, but are not limited to, one or more of the following particulars:

   a.     When placed in the stream of commerce, SUPER POLIGRIP contained unreasonably dangerous design defects and were not reasonably safe as intended to be used, subjecting Plaintiff PATRICIA E. CARROLL to risks that exceeded the benefits of the products, including but not limited to the risks of developing severe and permanent physical injuries, including but not limited to profound and

permanent neurological injuries, as a result of the upset to normal physiologic mineral homeostasis set in motion by excess zinc absorption from metabolized zinc, in an unacceptably high number of its users;

b.    When placed in the stream of commerce, SUPER POLIGRIP® was defective in design and formulation, making the use of SUPER POLIGRIP® more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other denture adhesive products on the market;

c.    SUPER POLIGRIP®'s design defects existed before it left the control of the Defendants;

d.    SUPER POLIGRIP® was insufficiently tested;

e.    SUPER POLIGRIP® caused harmful side effects that outweighed any potential utility; and

f.    SUPER POLIGRIP® was not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Plaintiff PATRICIA E. CARROLL herein, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendants, and each of them, liable to Plaintiff, individually and collectively.

63.    In addition, at the time SUPER POLIGRIP® left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiff PATRICIA E. CARROLL's injuries without impairing the reasonably anticipated or intended function of the products.  These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff PATRICIA E. CARROLL's injuries without substantially impairing the products' utility.

64.    Defendants knew of should have known that the ultimate users or consumers of this product would not, and could not, inspect SUPER POLIGRIP® or otherwise investigate so as to discover the latent defects described above.

65.    Plaintiff PATRICIA E. CARROLL used SUPER POLIGRIP® as intended in a manner reasonably foreseeable to Defendants, and in a manner that was reasonably foreseeable

by Defendants as involving a substantial danger not readily apparent if adequate instructions regarding use and warnings of the danger were not given.

66.    Plaintiff PATRICIA E. CARROLL was a foreseeable user of SUPER POLIGRIP®.

67.    As alleged herein, as a direct and proximate result of the Defendants' acts and omissions, and the unreasonably dangerous and defective characteristics of SUPER POLIGRIP®, Plaintiff PATRICIA E. CARROLL suffered severe and permanent physical injuries, including but not limited to profound and permanent neurological injuries. Plaintiff PATRICIA E. CARROLL has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to suffer physically and emotionally. Plaintiff PATRICIA E. CARROLL's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants, and each of them, as alleged herein.

68.    Plaintiff PATRICIA E. CARROLL has, and will continue to suffer losses and harms, including physical and emotional injury, which harms and losses are in excess of $75,000.00. These harms and losses were the legal and proximate result of the defects in SUPER POLIGRIP®, including but not limited to Defendants' failure to provide adequate instructions for use and warnings of the risks of substantial harm associated with the foreseeable use of said product.

## SECOND CAUSE OF ACTION
### NEGLIGENCE

69.    Plaintiff PATRICIA E. CARROLL incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

70.    Defendants owed a duty to Plaintiff PATRICIA E. CARROLL to use reasonable care in the development, design, manufacture, packaging, labeling, testing, marketing, advertisement, inspection, distribution, provision of warnings and instructions, and sale of SUPER POLIGRIP® to be used by the public and ultimate users, like Plaintiff PATRICIA E. CARROLL, for the purpose for which such products were intended.

71.    Defendants breached said duty and are guilty of one or more of the following negligent acts and/or omissions.

    a.      failing to use due care in the development, design, formulation, manufacturing, labeling, testing, assembly, marketing, advertising, inspection, sale and/or distribution of SUPER POLIGRIP® and/or to utilize and/or implement reasonably safe designs for it;

    b.      failing to provide adequate and proper warnings to the public and to Plaintiff of the dangerous propensities of SUPER POLIGRIP® when used in a reasonably foreseeable manner;

    c.      failing to design, formulate, manufacture and incorporate or to reformulate SUPER POLIGRIP® with reasonable safeguards and protections against the type of injury and damage suffered by Plaintiff PATRICIA E. CARROLL when used in a reasonably foreseeable manner;

    d.      failing to adequately prevent, identify, mitigate, and fix defective designs and hazards associated with SUPER POLIGRIP® in accordance with good design practices;

    e.      failing to notify and warn the public, including Plaintiff PATRICIA E. CARROLL, of reported incidents involving injury, etc., and the negative health effects of excess zinc, thus misrepresenting the safety of the product;

    f.      failing to make timely and adequate corrections to the manufacture, design and formulation of SUPER POLIGRIP® so as to prevent and/or minimize the problems suffered by SUPER POLIGRIP® use;

    g.      failing to use due care in the testing, formulation, inspection, distribution, sale and instructions regarding the product at all times prior to Plaintiff's injuries having manifested themselves; and

    h.      otherwise being careless and negligent.

72.     Defendants knew or should have known from their study and testing the understanding of the formula and its makeup, the toxicity of the products and their constituent parts, and their history, that the products were defective.

73.     Defendants knew or should have known that SUPER POLIGRIP® had the toxic propensities which they have presented here, and knew of different safer alternatives and adequate corrections which were available which would have avoided the incident, and Plaintiff PATRICIA E. CARROLL's damages and injury.

74.     Defendants developed, designed, formulated, manufactured, labeled, tested, marketed, advertised, inspected, sold, distributed and otherwise placed SUPER POLIGRIP® on the market and in the stream of commerce, and/or in a manner and in a condition unreasonably dangerous to the consumer.

75.     Plaintiff PATRICIA E. CARROLL's damages and injuries are the legal and proximate result of the negligent actions of Defendants.  As a result, Defendants are liable to Plaintiff PATRICIA E. CARROLL for compensatory and general damages.

76.     Plaintiff PATRICIA E. CARROLL has and will continue to suffer losses, including medical land loss of income, and harms, including physical and emotional injury, which harms and losses are in excess of $75,000.00.  These harms and losses were the legal and proximate result of the defects in SUPER POLIGRIP®, including but not limited to Defendants' failure to provide adequate instructions for use and warnings of the risks of substantial harm associated with the foreseeable use of SUPER POLIGRIP®.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PATRICIA E. CARROLL prays judgment against Defendants as follows:

1.   Special damages for PATRICIA E. CARROLL;

2.   General damages for PATRICIA E. CARROLL;

3.   Costs of suit;

4.   Prejudgment interest, and

5.   For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, PATRICIA E. CARROLL, hereby demands a trial by jury as to all claims in this action.


Date:  December 12, 2011

Respectfully submitted,


PROVOST ☆ UMPHREY
LAW FIRM, L.L.P.
490 Park Street
P.O. Box 4905
Beaumont, Texas 77704
(409) 835-6000
Fax No. (409) 838-8888

By: _____
Christopher T. Kirchmer
State Bar No. 00794099


ATTORNEY FOR PLAINTIFF